**BLUMENSCHINE et al.**

v.

**NEW PLAN REALTY TRUST et al.; The Collaborative, Inc.**

Court of Common Pleas of Ohio,
Lucas County.

No. C193–3387.

Decided April 7, 1996.

*Connelly, Soutar & Jackson, Steven P. Collier* and *Michael A. Bonfiglio,* for plaintiffs.

*Doyle, Lewis & Warner, Michael E. Hyrne* and *Michael A. Bruno,* for defendant New Plan Realty Trust.

*John D. Willey, Jr.* and *John H. Schaeffer,* for defendant Seaway Foodtown.

*Cooper, Straub, Walinski & Cramer* and *Joseph P. Dawson,* for third-party defendant The Collaborative, Inc.

JUDITH ANN LANZINGER, Judge.

## I

Norma E. Blumenschine filed this personal injury action against New Plan Realty Trust ("NPRT"), Seaway Foodtown, Inc. ("Foodtown"), and Creque Brothers Landscape Company, Inc.[1] Her husband filed a claim for consortium. Ms. Blumenschine fell on December 21, 1991 on the access ramp of a Foodtown Supermarket located at 2527 Parkway Plaza, Maumee, in Lucas County, Ohio, and fractured her hip. She alleges that defendants failed to maintain the ramp in a safe and dry condition and that, as a result, an unnatural accumulation of ice and snow created a slippery and dangerous condition which caused her injury. During pendency of this action, Principal Mutual Life Insurance Company was granted leave to intervene as a party plaintiff.

NPRT, the current owner of the property, filed a cross-claim for indemnity against defendant Foodtown based upon its lease contract.[2] NPRT also filed a third-party complaint for indemnity against The Collaborative, Inc., which designed and constructed the roof.[3]

Now before the court are certain defense motions. Defendant NPRT filed a motion for summary judgment on the initial complaint and on its cross-claim and third-party complaint for indemnity. Defendant Foodtown also filed a motion for summary judgment, which was joined in by The Collaborative. After due consideration of the motions, briefs of the parties and thorough review of the affidavits and depositions, the court grants the defendants' motions for summary judgment and dismisses NPRT's cross-claim and third-party complaint as moot.

## II

Civ.R. 56 governs summary judgments. A motion for summary judgment will be granted only when, after a most favorable reading of the record evidence to the opposing party, there is no genuine issue over any material fact and the party filing the motion is entitled to judgment as a matter of law. See *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73,

---

1. Defendant Creque Brothers Landscape Company, Inc. was voluntarily dismissed without prejudice from this action by plaintiff on September 23, 1994.

2. Foodtown's voluntary dismissal of a cross-claim against Creque Brothers Landscape Co., Inc. occurred October 19, 1994. NPRT's cross-claim against Creque Brothers was voluntarily dismissed without prejudice October 26, 1994. Creque's cross-claims against its codefendants for indemnity are also no longer an issue.

3. The Collaborative's motion to dismiss was overruled on September 14, 1994.

74, 375 N.E.2d 46, 47; Civ.R. 56(C). A motion for summary judgment forces the party opposing the motion to produce evidence on any issue for which she bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus.

In her complaint, Ms. Blumenschine alleges that Foodtown allowed unnatural accumulations of ice and snow to remain on an access ramp, creating an unreasonably slippery and dangerous condition; that defendants were negligent in designing the roof and failing to install eaves troughs to divert water away from the ramp; and that Foodtown failed to inspect the access ramp and failed to warn customers of the alleged dangerous condition. Defendants deny negligence.

In this case, even when the evidence is looked at most favorably for Ms. Blumenschine, summary judgment is appropriate, for there is no evidence with respect to the cause of her fall, or of an unnatural accumulation of either ice or snow, or any unnatural accumulation which caused the ramp where she fell to be more dangerous than the surrounding area. Without evidence of either breach of duty or proximate cause, all defendants are entitled to judgment as a matter of law.

## III

Its undisputed that Norma Blumenschine was a business invitee of defendant Foodtown. Ordinarily, an owner or occupier of land owes no duty to business invitees to remove natural accumulations of ice and snow from the private sidewalks on the premises or to warn an invitee of dangers associated with such natural accumulations of ice and snow. *Debie v. Cochran Pharmacy–Berwick, Inc.* (1967), 11 Ohio St.2d 38, 40 O.O.2d 52, 227 N.E.2d 603.

The Ohio Supreme Court in *Lopatkovich v. Tiffin* (1986), 28 Ohio St.3d 204, 206–207, 28 OBR 290, 292, 503 N.E.2d 154, 157, stated as follows:

"[S]now and ice are part of wintertime life in Ohio. As we noted in *Norwalk v. Tuttle* (1906), 73 Ohio St. 242, 245 [76 N.E. 617, 618]:

" ' * * * In a climate where the winter brings frequently recurring storms of snow and rain and sudden and extreme changes in temperature, these dangerous conditions appear with a frequency and suddenness which defy prevention and, usually, correction. * * * To hold that a liability results from these actions of the elements would be the affirmance of a duty which * * * would often be impossible, and ordinarily impractical * * * to perform.' "

Thus, a shopkeeper has no duty to a business invitee to remove natural accumulations of ice and snow.

Store owners do, however, have a responsibility to provide safe entrance and exit for their customers and to protect them against hazards from *unnatural* accumulations of ice and snow in an area which differs markedly from surrounding conditions. *Tyrrell v. Invest. Assoc., Inc.* (1984), 16 Ohio App.3d 47, 49, 16 OBR 50, 52, 474 N.E.2d 621, 624. See, also, *Weaver v. Std. Oil Co.* (1989), 61 Ohio App.3d 139, 141, 572 N.E.2d 205, 206.

The Sixth District Court of Appeals has defined the term "unnatural accumulation":

" 'Unnatural' accumulation must refer to causes and factors *other than* the inclement weather conditions of low temperature, strong winds and drifting snow, *i.e.*, to causes other than the meteorological forces of nature. By definition, then, the 'unnatural' is the man-made, the man-caused * * *.

" * * * [S]ince the build-up of snow and ice during winter is regarded as a natural phenomenon, the law requires, at the very least, some evidence of an intervening act by the landlord (or a property owner) that perpetuates or aggravates the pre-existing, hazardous presence of ice and snow." (Emphasis added.) *Porter v. Miller* (1983), 13 Ohio App.3d 93, 95, 13 OBR 110, 111–112, 468 N.E.2d 134, 136.

■ Plaintiff has presented no evidence to support her allegation that she fell on an unnatural accumulation. First of all, she admitted during her deposition that she was aware parking lot conditions were "awful" because it had snowed the night before. She entered the store carefully and without problem. Leaving the store about fifteen minutes later carrying a bag of hamburger buns, Ms. Blumenschine fell on the outside ramp located under a roof overhang. Her deposition describes the situation as follows:

"Q. When you walked out you walked out of these same doors you walked into?

"A. Yes.

"Q. And turned left to go to your car?

"A. Yes.

"Q. Did you notice anything different on the sidewalk at that point?

"A. No.

"Q. You were still protected by an overhang; is that correct?

"A. Yes.

"Q. Did you see any salt on the sidewalk?

"A. No.

"Q. Do you recall seeing any water on the sidewalk?

"A.  No.

"Q.  Do you recall any snow on the sidewalk?

"A.  Not under the overhang.

"Q.  Do you recall seeing any ice on the sidewalk?

"A.  Not under the overhang.

"Q.  At any time as you walked into the store and as you walked out of the store, did you see anyone shoveling or spraying salt on the sidewalk?

"A.  No.

"Q.  So you turn left to go to your car and what happened?

"A.  I looked to see if anything was coming, stepped on the ramp and fell. My foot slipped out from under me.

"Q.  Now, before you got to the ramp, were you looking on the sidewalk to see where you were going?

"A.  I was looking to see if there was cars coming.

"Q.  So you were walking and looking to you left and right at the same time?

"A.  Uh-huh.

"Q.  How many steps did you get on the ramp before you fell?

"A.  The first step.

"Q.  Do you recall which foot you stepped on the ramp with?

"A.  My right foot.

"Q.  And then what happened as you fell?

"A.  My whole body went up in the air and I fell completely on my right side. Just turned and all of me fell, you know, like at once.

"Q.  So your right foot, with your right foot you stepped on the ramp and you shot forward?

"A.  Yes.  Shot from under me."

Plaintiff did not know what caused her fall.  She knew the weather conditions. She left the store the same way she entered, although she did not actually walk on the ramp on her way into the store.

■    In responding to the motions for summary judgment, plaintiff attempts to create issues of fact through the depositions of Jason Scott and James Ernthausen.  Jason Scott, a Foodtown employee, testified that he had salted five or six times that day to rid the sidewalk and ramp area of ice and snow.  Plaintiff characterizes this as evidence of the "persistent hazardous" condition of the ramp

and sidewalk which required other precautionary measures to be taken by Foodtown. Portions of Ernthausen's deposition are also cited to suggest that the design of the roof was a problem, since ice, when thawing, would slide off the roof onto the sidewalk or ramp area. No evidence exists, however, to say that at the time of Ms. Blumenschine's fall there was any such substance on the ramp. Neither she nor her husband saw any. A speculative statement by Ernthausen that transfer of carts from the parking lot to the store may cause ice is not competent evidence to be considered pursuant to Civ.R. 56(E).

■ There is no testimony that precipitation from the overhang or movement of carts caused a hazardous *unnatural* accumulation of ice on the ramp. Conditions on the ramp were no different from general conditions existing in the parking lot on that day, as plaintiff herself acknowledged. A business owner's duty does not extend to protecting customers against hazards of natural accumulations of ice and snow which are similar to surrounding conditions. *Sidle v. Humphrey* (1968), 13 Ohio St.2d 45, 42 O.O.2d 96, 233 N.E.2d 589; *Debie v. Cochran Pharmacy–Berwick, Inc.* (1967), 11 Ohio St.2d 38, 40 O.O.2d 52, 227 N.E.2d 603.

■ After a careful review of the record, plaintiffs have not shown that there was a substantially more dangerous condition on the ramp at the Foodtown store than there was in the parking lot. Even assuming an accumulation were characterized as "unnatural," the hazardous condition created would need to be more dangerous than it would have been in the natural state. *Myers v. Forest City Ent., Inc.* (1993), 92 Ohio App.3d 351, 353–354, 635 N.E.2d 1268, 1269–1270. Therefore, no genuine issue of material fact exists over lack of duty owed to plaintiffs, and defendants are entitled to summary judgment in this case.[4] Indemnity issues between the parties are now moot.

## JUDGMENT ENTRY

It is ORDERED that the motion for summary judgment filed by defendant New Plan Realty Trust and the motion for summary judgment filed by defendant Seaway Foodtown, Inc., joined in by The Collaborative, Inc., are GRANTED; and

It is further ORDERED that judgment be entered in favor of defendant New Plan Realty Trust and against plaintiffs Norma E. Blumenschine, Donald E. Blumenschine, and Principal Mutual Life Insurance Company; and

---

**4.** Issues of contributory negligence need not be addressed. See, *e.g.*, *Wicichowski v. Gladieux V. Ent., Inc.* (1988), 54 Ohio App.3d 177, 180, 561 N.E.2d 1012, 1015.

It is further ORDERED that judgment be entered in favor of defendant Seaway Foodtown, Inc. and against plaintiffs Norma E. Blumenschine, Donald E. Blumenschine, and Principal Mutual Life Insurance Company; and

It is further ORDERED that the cross-claim for indemnity of defendant New Plan Realty Trust against defendant Seaway Foodtown is DISMISSED with prejudice; and

It is further ORDERED that the third-party complaint of defendant New Plan Realty Trust for indemnity against The Collaborative, Inc. is DISMISSED with prejudice.

THIS IS A FINAL APPEALABLE ORDER.

*Judgment accordingly.*